## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

|  |  |
|---|---|
| **ELCOMSOFT, LTD.,**<br><br>                    **Plaintiff,**<br>    **v.**<br><br>**PASSCOVERY CO. LTD,**<br>**ACCENTSOFT;**<br>**DENIS GLADISH; and**<br>**IVAN  GOLUBEV,**<br><br>                **Defendants.** | **Civil Action No.  2:13-cv-18** |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff ElcomSoft, Ltd. ( "ElcomSoft") hereby opposes Defendants Passcovery Co. Ltd.'s ("Passcovery's"), Accentsoft's, Denis Gladish's, and Ivan Golubev's (collectively, "Defendants'") motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6) (the "Motion").  Contrary to Defendants' arguments in the Motion and as discussed in detail herein, this Court has personal jurisdiction over Defendants because Passcovery / Accentsoft consented to the personal jurisdiction of this Court and Defendants distributed infringing software in the Commonwealth of Virginia.   Additionally, this District is the proper forum because this dispute stems primarily from ElcomSoft's patent and copyright infringement claims, which are properly being litigated in this federal District.  Furthermore, the Complaint properly states claims for which relief may be granted.  Consequently, this Court should deny Defendants' Motion.

**FACTS**

ElcomSoft is a recognized leader in the development of cryptographic-related software products.  Compl. ¶ 12 (Docket No. 1).  These software products include "Advanced Archive Password Recovery," "Advanced Office Password Recovery," "ElcomSoft Distributed Password Recovery" and "Advanced PDF Password Recovery," (collectively, the "Products") which ElcomsSoft registered with the United States Copyright Office prior to this litigation.  *Id*. ¶¶ 13-14.  ElcomSoft also owns United States Patent No. 7,787,629 (the "'629 Patent"), issued on August 31, 2010, and U.S. Patent No. 7,929,707 (the "'707 Patent," together with '629 Patent, the "Patents"), issued on April 19, 2011.  *Id*. ¶ 15.  The Patents offer an approach to accelerated password recovery by, among other things, utilizing the Graphical Processing Unit (GPU) and the methods claimed in the Patents are an essential part of ElcomSoft's Products and largely contribute to the commercial success of ElcomSoft's Products.  *Id*. ¶¶ 16-17.

In June 2003, ElcomSoft hired Golubev as a software developer pursuant to an employment agreement ("Employment Agreement") which contained non-disclosure and confidentiality provisions.  *Id*. ¶ 19; *see* Exhibit C to *Id*. ¶ 2.2.  During his employment with ElcomSoft, Golubev had access to, worked on, and developed in part the source code for the Products, as well as the GPU-based acceleration of password recovery feature.  Compl. ¶ 20.  During his employment, and without ElcomSoft's knowledge or authorization, Golubev secretly founded Passcovery / Accentsoft[1] with Gladish, before terminating his employment with ElcomSoft at the end of 2009.  *Id*. ¶ 20, 22.

---

[1] As alleged in ElcomSoft's pleadings and admitted by Defendants, Passcovery does business under the name Accentsoft.

Soon after Golubev left ElcomSoft, Passcovery / Accentsoft released three software applications titled "Accent OFFICE Password Recovery," "Accent ZIP Password Recovery," and "Accent RAR Password Recovery" (collectively, the "Infringing Products") that, upon information and belief, are solely derived from and based on the Products and related source code and which infringe the Patents and the copyrighted Products.  Compl. ¶ 24.  The Infringing Products are currently distributed under the name "Passcovery Suite" through Defendants' website at www.passcovery.com and www.accentsoft.com, and through numerous distributors such as www.download.com, www.fileforum.com, download.yahoo.com, and download.cnet.com. *See* Exh. B (Screenshot from www.passcovery.com/download as it appeared on May 16, 2013); Exh. C (Screenshot from www.fileforum.betanews.com as it appeared on May 22, 2013); Exh. D (Screenshot from www.downloads.yahoo.com as it appeared on May 16, 2013); Exh. E (Screenshot from www.accentsoft.com as it appeared on May 22, 2013); Exh. F (Screenshot from download.cnet.com as it appeared on May 22, 2013).

ElcomSoft believes that Golubev intentionally misappropriated ElcomSoft's protected technology while employed at ElcomSoft and subsequently disclosed the same to Gladish and Passcovery / Accentsoft in violation of, among other things, the non-disclosure and confidentiality provisions of the Employment Agreement.  Compl. ¶ 29; s*ee* Exh. C to Compl. ¶ 2.2.  Passcovery / Accentsoft employed and continues to employ Defendant Golubev for the purpose of acquiring an unfair competitive advantage over ElcomSoft by misappropriating ElcomSoft's proprietary materials, including, without limitation, the Products' source code. Compl. ¶ 30.  Moreover, Gladish and Golubev knowingly misappropriated ElcomSoft's Products and related technology, including without limitation, the GPU based acceleration of password

recovery feature and its underlying source code and incorporated the source code into the Infringing Products.  Compl. ¶ 32.

In November 2010, ElcomSoft sent a cease and desist letter to Defendants requesting that Defendants immediately cease their infringement of ElcomSoft's intellectual property.  Compl. ¶ 33; s*ee* Exh. E to Compl.  Defendants ignored ElcomSoft's demands and continued their infringing activities by distributing, marketing and selling the Infringing Products through various resellers and websites in the United Sates and other countries.  Compl. ¶ 34.  To prevent further damage to its intellectual property, ElcomSoft sent "take down" notices pursuant to 17 U.S.C. §512 (c)(1)(C) (collectively, "DMCA Notices") to Google, Inc., SoftKey ZAO, CifNet, Inc. and Avangate BV in connection with Defendants' infringing activities. *Id*. ¶ 35, *see* Exhibit F-1 to F-3 to Compl; Exh. H (DMCA takedown notice to Google, Inc.).  In September 2011, Passcovery / Accentsoft provided "counter notification" pursuant to 17 U.S.C. § 512(g)(3) in response ElcomSoft's DMCA Notices.  Compl. ¶ 36; *see* Exhibit G1 to G3 to Compl.

Importantly, in each response, Passcovery / Accentsoft explicitly averred as follows:

I hereby consent to the jurisdiction of the Federal District Court for any judicial district which you, the service provider, may be found, and will accept service of process from the person who provided notification under subsection 17 U.S.C. § 512(c)(1)(C) or an agent of such person.

Exhibit G1 to G3 to Compl. (emphasis added).

During the eight months interval between ElcomSoft sending its DMCA Notices and Passcovery / Accentsoft sending it counter notification, ElcomSoft believes that Defendants revised the Infringing Products' source code in such way as to hide, conceal and mask the presence of ElcomSoft's source code in the Infringing Products.  Compl. ¶ 37.

4

After Defendants again ignored ElcomSoft's demands for Defendants to cease their infringing activities, ElcomSoft brought this suit in the judicial district in which the service provider is found asserting patent infringement, copyright infringement, unjust enrichment, and breach of contract claims.

## I.    This Court Has Personal Jurisdiction Over Defendants

Determination of whether a court may exercise personal jurisdiction over a given defendant in a patent infringement suit is governed by Federal Circuit law.  *Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 633 (E.D. Va. 2010); *see also Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2009) ("[W]e apply Federal Circuit law because the jurisdictional issue is 'intimately involved with the substance of the patent laws.'").   Because jurisdictional discovery has not been conducted, ElcomSoft only needs to make a *prima facie* showing that Defendants are subject to personal jurisdiction of this Court and all pleadings and affidavits are to be construed in a light most favorable to ElcomSoft. *Avocent Huntsville Corp.*, 552 F.3d at 1329.  Even when the parties provide documentary evidence beyond the allegations in the Complaint, the *prima facie* standard still controls. *Northbrook Digital LLC v. Vendio Servs.*, 625 F. Supp. 2d 728, 748 (D. Minn. 2008) (*citing Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348-49 (Fed. Cir. 2003)).

Personal jurisdiction inquiry typically proceeds in two steps:  ElcomSoft must show that the requirements of (1) Constitutional due process and (2) the state long-arm statute are met. *Convergence Techs. (USA), LLC*, 711 F. Supp. 2d at 634 (*citing Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005)).  "Because Virginia's Supreme Court has held that Virginia's long-arm statute extends to the full extent of

the Due Process Clause, courts generally merge the statutory and constitutional inquiries." *Baker v. Patterson Med. Supply, Inc.*, 2011 U.S. Dist. LEXIS 152926 (E.D. Va. Nov. 17, 2011). Because due process is a jurisdictional floor, it is possible, to satisfy due process but not meet Virginia long-arm statute's ceiling. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 6 (4th Cir. 2005)

Ultimately, however, personal jurisdiction analysis is superfluous with regard to Passcovery / Accentsoft because both entities explicitly submitted to the personal jurisdiction by this Court.

### A.   Passcovery / Accentsoft Explicitly Submitted to the Personal Jurisdiction Of This Court As To ElcomSoft's Copyright Infringement Claim

The Digital Millennium Copyright Act ("DMCA") provides a procedure which allows the copyright holder, by means of a takedown notice, to request a third-party service provider to cease distribution of allegedly Infringing Products pending the receipt of a counter notification by the owner of the alleged Infringing Products denying the infringement claims. *See* 17 U.S.C. § 512. In order to be effective, this counter notification must include "a statement that the subscriber consents to the jurisdiction of Federal District Court for the judicial district in which the address is located, or if the subscriber's address is outside of the United States, for any judicial district *in which the service provider may be found* . . ." 17 U.S.C. 512(g)(3)(D) (emphasis added); *see Doe v. Geller*, 533 F. Supp. 2d 996, 1011 (N.D. Cal. 2008) ("the DMCA provides explicitly that internet users . . . who wish to rebut a takedown notice must consent to the jurisdiction of a federal district court . . .").

In responding to ElcomSoft's DMCA takedown notices directed to Google, Inc., Passcovery / Accentsoft explicitly submitted to the personal jurisdiction of "the Federal District

6

Court for _any_ judicial district which [Google, Inc.] may be found . . ." _See_ Exh. G-1 to Compl. at

2 (emphasis added).  Google, Inc. has had a corporate office in Reston, Virginia since at least

2008. Exh. I at 4 (Screenshot from www.google.com listing Google's corporate office in Reston,

Virginia); _see_ Exh. J (Blog article described Google Reston office opening in 2008).

Consequently, because Passcovery / Accentsoft explicitly consented to personal jurisdiction of

this Court wherever Google may be found, their objection to personal jurisdiction should be

deemed waived.  _See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee_, 456 U.S. 694,

703, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) ("Because the requirement of personal jurisdiction

represents first of all an individual right, it can, like other such rights, be waived."); _United States_

_ex rel. Probuild Co. v. Scarborough_, 2012 U.S. Dist. LEXIS 62427, 9-10 (E.D. Va. Apr. 11,

2012) (holding that parties may submit to personal jurisdiction by agreement); _Shropshire v._

_Canning_, 2011 U.S. Dist. LEXIS 4025 (N.D. Cal. Jan. 11, 2011) (finding that defendant

"expressly consented" to that court's jurisdiction by filing a DMCA counter-notice).

Defendants argue that because Google, Inc.'s "nerve center" is in California, Passcovery /

Accentsoft only submitted to personal jurisdiction in California.  Motion at 7, 8.  Defendants'

argument is contrary to both the plain meaning of the DMCA statutory language as well as the

wording used in their counter notification.  The DMCA provides that a party sending counter

notification must submit to the jurisdiction of "any" judicial district in which the service

provider, in this case, Google, Inc. "may be found." 17 U.S.C. 512(g)(3)(D).  In their counter

notification directed at Google, Passcovery / Accentsoft mirrored the DMCA's language.  Exh.

G-1 to Compl. at 2.  Nowhere in the DMCA or in their counter notification is Passcovery's /

Accentsoft's submission to personal jurisdiction limited to the service provider's "nerve center."

In fact, the presence of the word "any" suggests that both the DMCA and Passcovery / Accentsoft anticipated that a service provider may be found in multiple judicial districts. Furthermore, the phrase "may be found" has been interpreted in other contexts as extending to wherever the entity at issue is subject to personal jurisdiction. *See, e.g., Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 445 (7th Cir. 1993) (finding that the "may be found" clause of 28 U.S.C. § 1400(a) equates to amenability to personal jurisdiction); *CoStar Realty Information, Inc. v. Meissner*, 604 F. Supp. 2d 757, 773 (D. Md. 2009) ("The term 'may be found' in 1400(a) is interpreted to mean any district which may assert personal jurisdiction over a defendant."); *Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F. Supp. 393, 397 (W.D. Va. 1987) ("Being 'found within a district' connotes a corporations' presence in the district by way of its officers and agents carrying on corporate business within the  district.").  Given the scope of Google's business in Virginia, including through its corporate office in Reston, Google is subject to personal jurisdiction in the Eastern District of Virginia.  Accordingly, Passcovery / Accentsoft have submitted to the jurisdiction of this Court.

## B.  The Court Should Exercise Pendent Jurisdiction Over The Remaining Claims

Personal jurisdiction must be established for each independent claim in a complaint.  *See, e.g. J4 Promotions, Inc. v. Splash Dogs, LLC*, 2009 U.S. Dist. LEXIS 11023 (N.D. Feb. 13, 2009).  Passcovery / Accentsoft voluntarily submitted to the personal jurisdiction of this Court for adjudication of ElcomSoft's copyright claim.  *See* Section A *supra*.  Even if this Court lacks independent personal jurisdiction over ElcomSoft's other claims, because ElcomSoft's patent infringement, breach of contract, and unjust enrichment claims arise out of the same nucleolus of

operative facts as its copyright infringement claim, this Court should exercise pendent personal

jurisdiction over those claims.

> Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim. In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction.

*United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. Okla. 2002) *(citations omitted)*; *see*

*also ESAB Group v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997) (joining other circuit

courts in recognizing pendent personal jurisdiction).

Here, all claims arise out of same fundamental facts: Defendants have benefited from

intentionally misappropriating ElcomSoft's proprietary technology and software, thereby

breaching their statutory, common law, and, in the case of Golubev, contractual obligations to

ElcomSoft. Compl.¶¶ 12-39. In light of this, severing the claims to be tried separately would

make little sense, as this would create essentially duplicative proceedings, all arising out of

essentially the same set of facts. Defendants already have to defend against ElcomSoft's

copyright infringement claim in this Court – it would require only minimal additional burden to

adjudicate the patent infringement, breach of contract, and unjust enrichment claims here as well.

## C. This Court May Exercise Specific Jurisdiction Over Passcovery / Accentsoft and Golubev

"In determining whether specific jurisdiction exists, the court considers (1) the extent to

which the defendant has purposefully availed himself of the privilege of conducting activities in

the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and

(3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Jensen v.*

*Klayman*, 115 Fed. Appx. 634, 635 (4th Cir. Va. 2004). "Even a single contact may be sufficient

to create jurisdiction when the cause of action arises out of that single contact, provided that the

principle of 'fair play and substantial justice" is not thereby offended. *Carefirst of Md., Inc. v.*

*Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (*quoting Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 477-78 (1985)).

        **1.**     **Passcovery / Accentsoft and Golubev Have Purposefully Availed Themselves of the Privilege of Conducting Activities in Virginia.**

Under the stream of commerce theory, a defendant purposefully directs its activities at a

state if it delivers its products into the stream of commerce with the expectation that they will be

purchased by consumers in such state. *LG Elecs., Inc. v. Asustek Computers*, 126 F. Supp. 2d

414, 419 (E.D. Va. 2000). "In the context of a personal jurisdiction analysis, purposefulness is

not based on whether a defendant knowingly contacts the forum state . . . [but instead] on

whether the defendant has reason to be aware, from its purposeful conduct, that it may be haled

into the courts of the forum state. This question is informed by whether the defendant receives

such benefits from the forum state that it may also expect to be subject to liability there."

*Northbrook Digital LLC*, 625 F. Supp. 2d at 752. In the instant case, this analysis is informed by

Passcovery / Accentsoft having made the Infringing Products available to be downloaded by

consumers in Virginia, which Golubev licensed to Passcovery / Accentsoft for that purpose.

Consequently, Passcovery / Accentsoft and Golubev cannot now argue that they had no reason to

be aware that they may be haled into Virginia's courts. *See Id.* ("The peer-to-peer file sharing

cases strongly support the proposition that, where users in the forum state download and use

10

software published by the defendant there is sufficient proof that the defendant purposefully directed its activities into the forum state.").

Passcovery / Accentsoft distribute the Infringing Products either directly through its website or through a myriad of distributors.  Exh. A to Motion (Declaration of Denis Gladish) ¶¶ 22; *see* Exh. B, Exh. E. As admitted in his declaration, Golubev licenses the Infringing Products to Passcovery / Accentsoft.  Exh. B to Motion (Declaration of Ivan Golubev) ¶ 6.  The Infringing Products are distributed as either free, evaluation versions or paid full versions of the same software.  Based on Gladish's declaration on behalf of Passcovery / Accentsoft, it appears that the paid full versions of the Infringing Products are distributed directly through Passcovery's / Accentsoft's website and through several distributors, namely, Digital River, Inc., PayPro Global, Inc., and Avangate BV.  *See* Exh. A to Motion ¶¶ 9, 11, 22.  Gladish also declares that, as of December 2010, one paid version of the Infringing Products had been sold in Virginia through those distributors.  *Id*. ¶ 35.

Defendants are conspicuously silent, however, as to the reach of their distribution of evaluation versions of the Infringing Products.  Distribution of a free version of an infringing product is relevant for the purposes of jurisdictional analysis.  *See, e.g. Northbrook Digital LLC*, 625 F. Supp. 2d at 752 (D. Minn. 2008) (". . . the free downloads have a plain commercial purpose, to encourage users to buy from advertised merchants . . .").  Passcovery / Accentsoft distribute evaluation versions of the Infringing Products through a variety of internet-based distributors, including but not limited to Passcovery / Accentsoft's own websites (www.passcovery.com and www.accentsoft.com) as well as U.S.-based distributors such as Yahoo.com, CNet.com, and FileForum.com.  *See* Exh. B, C, D, E, F.  Based on the prominence

11

of these U.S.-based distributors alone, this Court should conclude that the Virginia consumers are likely to have downloaded evaluation versions of the Infringing Products.  *See* Exh. G (Screenshot of Alexa.com ranking for Cnet.com as of May 22, 2013); Exh. K (Screenshot of Alexa.com ranking for Yahoo.com as of May 22, 2013).   Further, one of the distributors of the Infringing Products, FileForum.com, is based in Reston, Virginia, which adds to Passcovery's / Accentsoft's connection with this forum.  *See* Exh. L (Screenshot from the WHOIS entry for FileForum.com as of May 15, 2013).  Additionally, Passcovery / Accentsoft admitted that as of December 2010, at least one Infringing Product was sold to a Virginia-based consumer.  Exh. A to Mot. ¶ 35.  Passcovery / Accentsoft does not indicate whether its resellers have sold Infringing Products in Virginia since December 2010.  In light of these facts, Passcovery's / Accentsoft's claim that it was not aware that it could be haled into a Court in this forum to answer for its infringement is unreasonable.  Furthermore, because Golubev has worked with Passcovery / Accentsoft and Gladish since at least 2009, it can be reasonably inferred that he was aware of Passcovery's / Accentsoft's contacts with the forum state and continued to license the Infringing Products to Passcovery / Accentsoft.  *See* Exh. B to Mot ¶ 6, Compl. ¶  22.

Because Passcovery / Accentsoft sold Infringing Products to at least one Virginia-based consumer (with the potential that discovery will confirm that it sold many more), distributed evaluation versions of the Infringing Products through a variety of U.S.-based internet software distributors, and distributed evaluation versions of the Infringing Product through at least one U.S.-based internet software distributor, and Golubev licensed the Infringing Products to Passcovery / Accentsoft while working closely with Passcovery / Accentsoft and Gladish since

2009, ElcomSoft has shown that Passcovery / Accentsoft and Gladish purposefully availed themselves of conducting business in this forum.

> **2. ElcomSoft's Claims Arise Out Activities Directed at the Forum State and Exercise of Personal Jurisdiction Would be Constitutional Reasonable**

ElcomSoft states four claims in its Complaint and each claim arises out of Defendants distributing software products which infringe ElcomSoft's intellectual property rights. Passcovery / Accentsoft has already admitted that it sold at least one of the Infringing Products in Virginia, which Golubev admits he licensed to Passcovery / Accentsoft. <u>Exh. A</u> to Mot. ¶ 35; <u>Exh. B.</u> to Mot. ¶ 6. Furthermore, as described above, ElcomSoft has good reason to believe that numerous evaluation versions of the Infringing Products were distributed to Virginia consumers. Additionally, one of Passcovery's / Accentsoft's distributors— FileForum—is based in Virginia, and Passcovery / Accentsoft and Golubev presumably allowed the Infringing Products to be distributed through that Virginia-based distributor. This conduct shows that ElcomSoft's harm arose out of Defendants' conduct in Virginia.

With regard to whether exercise of personal jurisdiction would be constitutionally reasonable, the Court may consider "additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself" of the forum. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009). Such factors include: (1) "the burden on the defendant of litigating in the forum;" (2) "the interest of the forum state in adjudicating the dispute;" (3) the plaintiff's interest in obtaining convenient and effective relief;" (4) "the shared interest of the states in obtaining efficient resolution of disputes;" and (5) "the interests of the states in furthering substantive policies." *Id*. at 277

(*citing Burger King Corp.*, 471 U.S. at 477; *World-Wide Volkswagen Corp. v. Woodson*, 444

U.S. 286, 297 (1980)).  Such factors weigh in favor of adjudicating this dispute in Virginia.

As discussed in greater detail at Section II *infra*, this dispute hinges on Defendants'

violations of ElcomSoft's U.S. patents and copyright registrations.  Accordingly, this dispute

cannot be litigated anywhere outside of the United States.  Given that ElcomSoft and

Defendants are all foreign entities, Virginia has as much at stake in enforcing U.S. patents and

copyright registrations as any other forum.  Furthermore, ElcomSoft's counsel is based in

Virginia, ElcomSoft has a substantial customer base in the United States, and ElcomSoft's

choice to bring its suit in Virginia should be entitled substantial weight.  *See Acterna, L.L.C. v.*

*Adtech, Inc.*, 129 F.Supp.2d 936, 938 (E.D.Va.2001); Exh. A (Declaration of Vladimir

Katalov) ¶¶ 3-7.

Defendants are not particularly inconvenienced by defending this suit in Virginia as

opposed to any other forum in the United States.  Defendants are Russian-based individuals

and entities who would bear substantially the same expenses in defending a lawsuit in Virginia

as they would in any other state.  Furthermore, Defendants have hired local counsel in

Virginia, which cuts against a showing that any inconvenience borne by Defendants would

preclude a fair resolution of this suit.  *See 5EI, LLC v. Take Action Media, Inc.*, 2012 U.S. Dist.

LEXIS 132443 ("In addition, although there would be some burden on Defendants to litigate

outside of their home state of Florida, Defendants have retained local counsel here.  Thus, any

resulting burden does not appear to preclude the fair resolution of this suit.").

**3.  Virginia's Long-Arm Statute Extends to Passcovery / Accentsoft and Golubev**

14

Section 8.01-328.1(A)(3) provides that to subject a nonresident defendant to personal jurisdiction in Virginia, plaintiff must alleges 'that one essential act of the alleged tort occurred in Virginia.'" *People Express Airlines, Inc. v. 200 Kelsey Assocs.*, 2013 U.S. Dist. LEXIS 16002 (*quoting Provident Pharm., Inc. v. Amneal Pharms., LLC*, 2008 U.S. Dist. LEXIS 92382 at *3 (E.D. Va. Nov. 13, 2008)); *see* Section 8.01-328.1(A)(3) ("A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . Causing tortious injury by an act or omission in this Commonwealth"). ElcomSoft clearly meets this requirement: Passcovery / Accentsoft injured ElcomSoft by distributing the Infringing Products in Virginia (which Passcovery / Accentsoft has admitted) and which were licensed to Passcovery / Accentsoft by Golubev.  Accordingly, Virginia's long-arm statute extends to Passcovery / Accentsoft and Golubev.  *See* Compl. ¶¶ 12-39; <u>Exh. A</u> to Mot. ¶ 35; <u>Exh. B.</u> to Mot. ¶ 6.

**D.**     **This Court Should Permit Jurisdictional Discovery To Determine Whether Specific or General Jurisdiction Exists Over Defendants Gladish and, If Necessary, Golubev**

Discovery under the Federal Rules of Civil Procedure is "broad in scope and freely permitted." *Titan Atlas Mfg. v. Sisk*, 2011 U.S. Dist. LEXIS 76722.  Accordingly, it within this Court's discretion to grant limited jurisdictional discovery to ElcomSoft in order to determine whether Gladish and, if necessary, Golubev, have sufficient contacts with Virginia to justify exercise of personal jurisdiction by this Court.   *See, e.g. Mamo v. BP P.L.C.*, 2006 U.S. Dist. LEXIS 12876 (granting plaintiff leave to conduct jurisdictional discovery).

ElcomSoft has a sound basis to support its position that Gladish is amenable to specific jurisdiction in this forum.  In his declaration, Gladish admits that he sells software products in

his individual capacity as well through Accentsoft and Passcovery. Exh. A to Mot. ¶¶ 6, 11, 22. He also admits that three resellers Digital River, Inc., PayPro Global, Inc. and Avangate BV resell his software. *Id*. ¶ 22. Although Gladish denies that he personally sells any software in the U.S. or that he has sold software in Virginia, it remains to be determined whether any of Gladish's distributors sold or otherwise distributed Infringing Products to Virginia consumers on Gladish's behalf. *Id*. ¶ 6. ElcomSoft believes that Gladish may be selling the Infringing Products in his personal capacity in Virginia, thereby continuing to harm ElcomSoft. Accordingly, ElcomSoft seeks a 60 (sixty) day jurisdictional discovery period in order to ascertain, with certainty, whether Gladish has sold Infringing Products in his personal capacity in Virginia sufficient to establish specific jurisdiction in this district.

ElcomSoft has already demonstrated that this Court has specific jurisdiction over Golubev by virtue of his licensing of the Infringing Products to Passcovery / Accentsoft, despite knowing full-well that those products were being distributed in Virginia and to Virginia consumers. However, in the event that this Court find these contacts to be insufficient to establish specific jurisdiction, ElcomSoft requests a sixty (60) day jurisdiction discovery period in order to determine whether Golubev has been distributing the Infringing Products in his personal capacity to consumers in Virginia. Golubev has declared that he is the author of the Infringing Products, that he had a "business relationship" with ElcomSoft and that he licenses the Infringing Products to Passcovery / Accentsoft. Exh. B to Mot. ¶ 6-7, 11. It remains to be determined whether Golubev has sold or otherwise distributed the Infringing Products through distributors, in a manner similar to Passcovery / Accentsoft in quantities

sufficient to establish specific jurisdiction. Jurisdictional discovery may be necessary in order to establish these facts.

## II.     Virginia Is An Adequate Forum For This Case

In its Motion, Defendants set forth a specious argument that Virginia is a *forum non conveniens* for adjudication of this dispute and that, instead, ElcomSoft should have brought suit in Russia where the parties reside. Mot. at 10-12. Defendants, however, have not met their heavy burden to establish that Virginia is a *forum non conveniens* and ignore the simple fact that the crux of this lawsuit is based on enforcement of United States patents and copyrights, which are properly enforced in a United States court. Accordingly, Defendants' arguments should be dismissed and Virginia confirmed as a proper forum for adjudication of this dispute.

"When the Court conducts its inquiry into whether certain claims should be dismissed on *forum non conveniens* grounds, it must determine, as a threshold matter, 'whether there exists an alternative forum' in which such claims can be heard." *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 2010 U.S. Dist. LEXIS 70191 (W.D. Va. July 13, 2010) (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, n. 22 (U.S. 1981). The burden is on the party seeking dismissal on *forum non conveniens* grounds to establish that an adequate forum is available in which the claims could be litigated and as well as the burden of establishing that the *forum non conveniens* public and private factors weigh in favor of dismissal. *MicroAire Surgical Instruments, LLC.*, 2010 U.S. Dist. LEXIS 70191; *see Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the

17

plaintiff's chosen forum.").  In order for the Court to dismiss on this basis, the factors have to

weigh strongly in favor of transfer.  *Heathmount A.E. Corp. v. Technodome.com*, 2000 U.S.

Dist. LEXIS 20316 (E.D. Va. Dec. 29, 2000).

Defendants have abjectly failed to show, as a threshold matter, that Russia is an

adequate alternative forum for litigating this case.  Nowhere in Defendants' Motion or

supporting declarations do Defendants demonstrate that ElcomSoft's patent infringement and

copyright infringement claims, which are rooted in enforcement of United States patents and

copyright registrations, can be brought and fairly litigated in Russia.[2]  Defendants have also

failed to show that ElcomSoft's unjust enrichment and breach of confidentiality claims are

cognizable claims in Russia and provide ElcomSoft sufficient redress so to allow Russia to

substitute for the Eastern District of Virginia in adjudicating these claims.  *See, e.g. Tech. Dev.*

*Co. v. Onischenko*, 536 F. Supp. 2d 511, 519 (D.N.J. 2007) (refusing to dismiss for *forum non*

*conveniens* based on defendant failing to show that Russian law allowed for claims redress);

*Varnelo v. Eastwind Transp.*, No. 02-2084, 2003 U.S. Dist. LEXIS 1424 at *15 (S.D.N.Y. Feb.

3, 2003) (noting that adequacy of a foreign forum and the substance of any relevant foreign

law is usually established through expert affidavits or declarations).

Perplexingly, Defendants argue that because ElcomSoft's End-User License

Agreements ("EULAs") includes a choice of forum clause, ElcomSoft should be estopped from

choosing Virginia as the proper forum for adjudicating this dispute.  Mot. at 11.  This is

---

[2] In his declaration, Golubev states "Russian law provides for protection against breach of
Russian employment agreements, misappropriation of trade secrets, copyright, patent
infringement and fraud."  Exh. B to Mot. ¶ 22.  Golubev is neither an attorney nor an expert of
Russian law and therefore is not qualified to establish that ElcomSoft's claims may be litigated
in Russia.

nonsense.  ElcomSoft does not allege that Defendants breached its EULAs, thereby implicating

the choice of forum clause in that contract.  In fact, ElcomSoft's claims have nothing at all to

do with its EULAs.  Rather, the claims put forth in the Complaint are completely independent

claims of intellectual property infringement, unjust enrichment, and breach of confidentiality

obligations.  Defendants' argument regarding EULAs is a red herring designed to mislead this

Court.

Furthermore, as plaintiff in this matter, deference should be afforded to ElcomSoft's

choice of forum because it was motivated by convenience in bringing the case.  Although less

deference is generally afforded to a foreign plaintiff's choice of forum, that "is not an

invitation to accord a foreign plaintiff's selection of an American forum no deference since

dismissal for *forum non conveniens* is the exception rather than the rule."  *Lacey v. Cessna*

*Aircraft Co.*, 862 F.2d 38, 46 (3d Cir. 1988).  The greater plaintiff's convenience in litigating

the case in the United States, the more difficult it is to dismiss on *forum non conveniens*

grounds.  *See Tech. Dev. Co. v. Onischenko*, 536 F. Supp. 2d 511, 520 (D.N.J. 2007) (finding

that a foreign plaintiff's choice of forum is entitled to significant deference).

Although ElcomSoft is based in Russia, it has significant business contacts in the

United States.  ElcomSoft has a substantial client base in the United States, has retained

counsel in the United States since 1999, and has applied for, and received, five United States

patents and eleven U.S. copyright registrations, some of which form the basis of ElcmoSoft's

claims against Defendants.  *See* Exh. A ¶¶ 3-7.  These factors weigh in favor of Virginia

serving as a convenient forum for ElcomSoft to litigate this dispute.

19

Additionally, both private and public interest factors weigh in ElcomSoft's favor. ElcomSoft's burden of litigating abroad is roughly equal to Defendants' inconvenience to litigate in Virginia. *See Onischenko.*, 536 F. Supp. 2d at 521. Defendants have not established that the "oppressiveness and vexation" to them is "out of all proportion to plaintiff's convenience." *Piper Aircraft Co.*, 454 U.S.at 242. Essentially, ElcomSoft and Defendants are on equal ground litigating in Virginia. "When a court finds that the balance of private interest factors is close to 'equipoise' or even tipped toward the defendant, the court is constrained to conclude that the factors weigh in favor of retaining jurisdiction. *Onischenko*, 536 F. Supp. 2d at 522 (*citing Lony v. E. I. Du Pont de Nemours & Co.*, 886 F.2d 628, 635 (3d Cir. Del. 1989)).

Finally, public interest factors weigh in ElcomSoft's favor because Virginia has an interest in stopping the distribution of Infringing Products in Virginia. Russia's interest in this case, on the other hand, is tangential at best. Given that patent and copyright protections are territorial, Russia has no interest in ensuring that the distribution of software in the United States abides by United States intellectual property laws.

## III.    Virginia Is Proper Venue For This Case

Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C § 1391(b) as well as § 1391(c)(3). Section 1391(b) provides that a civil action may be properly brought in either "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" or, "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." Here, because the harm caused by Defendants—specifically, the

infringement of ElcomSoft's intellectual property—occurred in Virginia, a substantial part of the events giving rise to the claim occurred in Virginia.

However, even if this was not the case, given that there is no other U.S. judicial district where this case could be brought, venue is proper so long as this Court has personal jurisdiction over Defendants pursuant to Section 1391(b)(3).  *See FS Photo, Inc. v. Picturevision, Inc.*, 48 F. Supp. 2d 442, 448 (D. Del. 1999) (explaining that the purpose of Section 1391(b)(3) is to create a safety valve to ensure that venue requirements do not defeat the ability to bring suit in federal court if subject matter and personal jurisdiction are available). As set forth above, this Court may exercise personal jurisdiction over Passcovery / Accentsoft and Golubev, and ElcomSoft has requested jurisdictional discovery with regard to Gladish.  Accordingly, venue is proper in this judicial district.

Furthermore, venue is proper in the Eastern District of Virginia because each of the Defendants in this patent infringement suit is a foreign entity/individual.  Section 1391(c)(3) of 28 U.S.C. provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants." *See Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 714, 92 S. Ct. 1936, 32 L. Ed. 2d 428 (1972) (holding in a patent infringement case against a Canadian corporation that venue was governed by § 1391(d) [now codified at § 1391(c)(3)], rather than by § 1400(b)).  The Federal Circuit has stated that "a patent infringement suit could be brought against a foreign defendant in any district court, and was not restricted to where the defendant resides, commits acts of infringement, or has a

regular and established business as otherwise required under the patent venue statute." *In re Princeton Digital Image Corp.*, 496 Fed. Appx. 73, 75 (Fed. Cir. 2012).

## IV.   ElcomSoft Properly Stated Its Copyright Infringement, Patent Infringement, and Unjust Enrichment Claims

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of claims alleged in a complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Jackson v. Michalski*, 2011 U.S. Dist. LEXIS 93361 (W.D. Va. Aug. 22, 2011) (*quoting Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  In considering a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Id.* (*citing Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)).  Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A.   ElcomSoft Properly Stated Its Copyright Infringement Claim

To properly state a claim of copyright infringement two elements must be shown:  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Jackson*, 2011 U.S. Dist. LEXIS 93361, *46 (*quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  "A copyright granted by the United States Copyright Office is prima facie proof of the validity of the copyright, including the existence of the elements of originality and fixation."  *Id.* *49 (*citing M. Kramer Mfg. Co. v. Andrews,* 783 F.2d 421, 434 (4th Cir. S.C. 1986)).  Copying can be established either directly or indirectly. *Ganz Bros. Toys v. Midwest Importers*, 834 F. Supp. 896,900 (E.D. Va. Oct. 20,

22

1993); *see also Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2nd Cir. 1980); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977). Indirect copying may be established by showing (1) defendant's access to the copyrighted work and (2) substantial similarity between the copyrighted work and the allegedly infringing work. *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 441 (4th Cir. 1986).

ElcomSoft's allegations, which must be taken as true for purposes of Defendants' motion, require that this Court deny Defendants' motion to dismiss the copyright claim. ElcomSoft has attached to the Complaint the copyright registrations for the source code and the software programs associated ElcomSoft's infringed Products,[3] which entitle the Products to a presumption of a valid copyright protection. Exh. A1- A5 to Compl.; *see Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 831-32 (10th Cir. 1993).  Further, during Golubev's employment with ElcomSoft, he had access to, worked on, and developed in part, the source code for Products.  Compl. ¶19.  ElcomSoft contends that Golubev, during and after his employment with ElcomSoft, knowingly and willfully incorporated portions of the source code of the Products into Defendants' Infringing Products.  *Id.* ¶¶ 19-20, 24, 28, 32.   Soon after Golubev left ElcomSoft, Defendants began to sell and distribute the Infringing Products that are substantially similar to the Products.  Hence, ElcomSoft contends that Defendants incorporated ElcomSoft's Products underlying source code into Infringing Products, thereby infringing ElcomSoft's intellectual property rights.  *Id.* ¶¶ 24-25, 39, 43, 50.  Clearly

---

[3] Software products titled "Advanced Archive Password Recovery," "Advanced Office Password Recovery," "ElcomSoft Distributed Password Recovery," and "Advanced PDF Password Recovery"

ElcomSoft meets every threshold of the copyright infringement analysis set forth above.  *See*

*M. Kramer Mfg. Co.,* 783 F.2d at 441.

ElcomSoft further alleged that, between approximately January and September 2011,

ElcomSoft revised the source code of the Infringing Products so as to hide, conceal, and mask

the presence of the Copyrighted Products' source code in the Infringing Products.  *Id.* ¶ 37.

Defendants did this willingly and without ElcomSoft's authorization, thereby willfully

infringing ElcomSoft's copyrights in the Products.  *Id.* ¶¶ 45, 52.

In its Motion, Defendants argue that, as a matter of law, the Infringing Products lack

any substantial similarity to ElcomSoft's Products.  Mot. at 15.  However, given that

Defendants do not dispute that Golubev has access to the underline source code of ElcomSoft's

Products and substantial similarity between the ElcomSoft's Products and Infringing Products

with regard to their respective functions and expression, Defendants' motion to dismiss must

be denied.  Compl. ¶¶ 19, 50, 52; *see Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 732-33

(4th Cir. 1990) (the two-part substantial similarity test); *SecureInfo Corp. v. Telos Corp.*, 387

F. Supp. 2d 593, 613 (E.D. Va. 2005) ("The Court must deny the defendants' motion to

dismiss because it cannot conduct a factual inquiry into the truth of Plaintiff's allegations on a

12(b)(6) motion.).

### B.      ElcomSoft Properly Stated Its Patent Infringement Claim

As set forth in the Complaint, ElcomSoft's patent infringement claim is properly pled.

To state a claim for patent infringement, the Complaint must allege that a person "(1) without

authority, (2) makes, uses, offers to sell, sells, or imports any patented invention within the

United States, (3) during the term of the patent."  *LG Elecs., Inc. v. Asustek Computers*, 126 F.

24

Supp. 2d 414, 418 (E.D. Va. 2000).  The Complaint alleges just that: Defendants have made,

offered to sell, sold, and imported software products that infringe ElcomSoft's patents without

ElcomSoft's permission to do so.  *See* Compl. ¶¶ 15, 24-28, 41-46.  Rather than attempt to show

that ElcomSoft has failed to allege the elements of a patent infringement claim, however,

Defendant's motion appears to be a confused mishmash of multiple theories, none of which

belong in a motion to dismiss based on lack of jurisdiction or based on a failure to state a claim.

Essentially, Defendant's argument conflates invalidity, unenforceability, judicial notice and

jurisdictional issues, all rolled into a confused rant on what Defendants believe is wrong with

ElcomSoft's case with regard to both the law and the facts.  Accordingly, Defendants' theories

should be disregarded and their motion denied.

### 1.       Taking Judicial Notice and Validity

In their motion, Defendants raise invalidity and unenforceability defenses.  Mot. at 16-17.

However, a motion to dismiss based on jurisdictional issues or failure to state a claim is not a

proper vehicle for such arguments.  Both invalidity and unenforceability are *defenses* to patent

infringement, but they rely on a great deal of fact finding, none of which has yet taken place.[4]

*See SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 613 (E.D. Va. 2005) (Denying

defendant's motion to dismiss because defendant's arguments were based on the court

conducting a factual inquiry, which it cannot do on a 12(b)(6) motion).

In support of their argument, Defendants cite Kedem et al., *Brute force attack on UNIX*

*passwords with SIMD computer* (1999) ("Kedem").  Although invalidity arguments are improper

---

[4] Since Defendants raise invalidity and unenforceability defenses, but say nothing about non-infringement, it is reasonable to assume that infringement is conceded by Defendants, and that their strategy is to focus solely on invalidity and unenforceability.

at this stage (and, in any event, the Defendants bear the burden of proving invalidity by clear and convincing evidence, *see* 35 U.S.C. § 282), in brief:

Kedem does not teach a Graphical Processing Unit (GPU), unlike what is claimed. Additionally, Kedem describes a brute force attack on **keys**. However, **a key, and a password, are not the same thing**. The Patents are directed to a brute force attack on **passwords** – not on keys. Virtually none of the claim elements of any independent claim of the Patents are thus taught by Kedem.

In the "claim chart" (Exh. D to Mot.), Defendants attempt just such a sleight of hand – claim 1 of the '707 patent is illustrative:



Defendants also cite a Power Point presentation by Andrey Belenko at a 2008 conference.  Mot. at 16. The Patents have a 2007 priority.  Any presentations *after* the priority date are not prior art, and are irrelevant to an invalidity defense.

### 2.       Taking Judicial Notice and Unenforceability

Defendants also argue that the Patents are unenforceable.  For example, various attachments to the declaration by Ivan Golubev (Exh. B to Mot.), appear to be directed to an argument for unenforceability of the Patents, mostly based on (again) the Kedem article.

Even aside from improperly raising this defense in a jurisdictional motion, allegations alone are insufficient to show unenforceability. Defendants still need to *prove* a number of facts, including: (a) that Kedem is, in fact, relevant to the claims – when Kedem discloses virtually none of the elements of *any* independent claim; (b) that the inventor has actually read Kedem; and (c) most importantly, that the inventor believed that Kedem was relevant to the prosecution of the Patents, and yet *intentionally* chose not to disclose it to the USPTO.

Defendants have demonstrated none of this, instead offering only unsupported accusations.

### 3.       Validity of Means Plus Function Claims 3, 4, and 5 of the '707 Patent

Defendants contend that claims 3, 4 and 5 of the '707 patent are invalid under 35 U.S.C. § 112, paragraph 6.  A patent claim may be invalid if it combines a device and a method into a single claim.  *See IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005).  However, in the present case, the system claims are clearly system claims, and the method claims are clearly method claims.   In any event, Defendants do not appear to take their

27

own arguments seriously, since they hardly bother to explain exactly how or why the claims are

invalid under 35 U.S.C. § 112.

In sum, if Defendants wish to argue that the Patents have § 112 validity issues, that they

know better than the USPTO how means-plus-function claims should be drafted, that the claims

are invalid over prior art or are unenforceable, they will have plenty of opportunities to do so in

the next few months.  These theories are, however, inappropriate on a 12(b)(6) motion.

Finally, ElcomSoft is aware of no reported case where a Court found a patent invalid or

unenforceable on a motion to dismiss due to failure to state a claim, with zero evidentiary or

factual record in the case.  Defendants, despite their considerable chutzpah in making such a

demand of the Court, also cite no authority for doing so.

### 4.      ElcomSoft's Unjust Enrichment Claim Is Not Preempted By Copyright and Patent Laws

ElcomSoft's claims demonstrate that Defendants were enriched by material beyond

copyright and patent protection.  *See Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 938

(E.D. Va. 2010) (a claim may survive preemption if plaintiff can demonstrate that defendants

were unjustly enriched by material beyond copyright and patent protection).  As alleged in the

Complaint, Defendants enriched themselves by illegal misappropriating ElcomSoft's

technology, including, but not limited to, technology covered under ElcomSoft's patents and

copyright registrations, and other proprietary materials, such as trade secrets, in violation of the

confidentiality oblations in his employment agreement with ElcomSoft.  Compl. ¶¶ 18-24, 28-

29, 30 (" . . . for the purpose of acquiring an unfair competitive advantage over ElcomSoft by

misappropriating ElcomSoft's proprietary materials . . ."), 56.  Furthermore, Golubev, with

assistance from Gladish and Passcovery / Accentsoft, breached his non-disclosure and

confidentiality obligations to ElcomSoft and, in doing so, damaged ElcomSoft beyond merely the copyright and patent context.  *Id.* ¶¶ 31 ( ". . .  Passcovery knowingly employs Golybev in violation his obligations to ElcomSoft under the Employment agreement"), 32, 56. Consequently, the ElcomSoft's unjust enrichment claim are is not preempted and should not be dismissed.

## IV.    Russian Translation Is Unnecessary

There is absolutely no reason for this Court to order ElcomSoft to bear the burden of translating the pleadings in this case into Russian.  Defendants have retained U.S.-based attorneys and have shown no difficulty in responding to Plaintiff's Complaint up to this point, or in generating lengthy declarations in English.  Furthermore, Defendants' business operation appears to be conducted in English.  *See* Exh. B; Exh. E.  Tellingly, Defendants have not cited to single case where a court has burdened the plaintiff with translating the pleadings into another language under similar circumstances.  Accordingly, Defendants' motion for a more definite statement is without merit, designed solely to inconvenience ElcomSoft and, accordingly, should be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction, failure to state a claim, and for a more definite statement should be denied.  This Court should also grant ElcomSoft's request (60) days jurisdictional discovery to determine whether Gladish, and if necessary Golubev, have sufficient contacts in this district to permit exercise of personal jurisdiction by this Court.

Respectfully submitted,

Dated: May 24, 2013           By:   */s/ Filipp Kofman*
                                    Filipp Kofman (VA Bar No. 82302)
                                    fk@legal-counsels.com
                                    Kevin R. Garden (VA Bar No. 30244)
                                    kg@legal-counsels.com
                                    International Legal Counsels PC
                                    901 N. Pitt St., Suite 325
                                    Alexandria, VA 22314
                                    Telephone:    (703) 535-5565
                                    Fax:          (202) 318-0723
                                    Attorneys for Plaintiff ElcomSoft, Ltd.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2013, a true and correct copy of the foregoing document

was served electronically on all, including the below, counsel of record via the Court's ECF

system:

| **Duncan Glover Byers**<br>Byers Law Group<br>142 W York Street<br>Suite 910<br>Norfolk, VA 23510<br>(757) 227-3340<br>Fax: (757) 227-3341<br>Email: duncan.byers@byerslawgroup.com | **Jeffrey Dennis Wilson**<br>Byers Law Group<br>142 W York Street<br>Suite 910<br>Norfolk, VA 23510<br>(757) 227-3340<br>Fax: (757) 227-3341<br>Email: jdwilson@byerslawgroup.com |
| --- | --- |
| **Peter Andrew Koziol**<br>Assouline & Berlowe PA<br>2700 N Military Trail<br>Suite 150<br>Boca Raton, FL 33431<br> (561) 361-6566<br>Fax: (561) 361-6466<br>Email: pak@assoulineberlowe.com | |

Respectfully submitted,

*/s/ Filipp Kofman*

Filipp Kofman (VA Bar No. 82302)
fk@legal-counsels.com
Kevin R. Garden (VA Bar No. 30244)
kg@legal-counsels.com
International Legal Counsels PC
901 N. Pitt St., Suite 325
Alexandria, VA 22314
Telephone:    (703) 535-5565
Fax:             (202) 318-0723
Attorneys for Plaintiff ElcomSoft, Ltd.